UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No.
04-10053-RCL

UNITED STATES OF AMERICA

v.

ONIX FIGUEROA

## MEMORANDUM AND ORDER ON
## GOVERNMENT'S MOTION FOR DETENTION

March 29, 2004

DEIN, M.J.

### I. GOVERNMENT'S MOTION FOR DETENTION

The defendant, Onix Figueroa, is charged in a multi-count indictment with

conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846; and one count of

distribution of cocaine base and aiding and abetting in violation of 21 U.S.C. § 841(a)(1)

and 18 U.S.C. § 2.  An initial appearance was held on February 24, 2004, at which time

the government moved for detention on the grounds that the defendant was a danger to the

community (18 U.S.C. § 3142(f)(1)(C)); that his prior record warranted a detention hearing

(18 U.S.C. § 3142(f)(1)(D)); that there was a serious risk of obstruction of justice (18

U.S.C. § 3142(f)(2)(B)); and that the defendant posed a serious risk of flight (18 U.S.C. §

3142(f)(2)(A)).  A detention hearing was held on February 27, 2004 at which time the

defendant, through counsel, requested a continuance until March 9, 2004.  A detention

hearing was held on March 9, 2004, at which time the defendant was represented by counsel. The government presented the testimony of Special Agent Mark Karangekis of the FBI. The hearing was continued on March 25, 2004, at which time the defendant was represented by counsel. Cross-examination took place on that date, and the defendant submitted additional materials after the hearing which this court has considered. For the reasons detailed herein, this court orders that the defendant be detained prior to trial.

## II. THE BAIL REFORM ACT

A.      Under the provisions of 18 U.S.C. § 3142 ("The Bail Reform Act"), the judicial officer shall order that, pending trial, the defendant either be (1) released on his or her own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation or exclusion; or (4) detained. See 18 U.S.C. § 3142(a).

Under § 3142(e), a defendant may be ordered detained pending trial if the judicial officer finds by clear and convincing evidence after a detention hearing "that no condition or combination of conditions (set forth under § 3142(b) or (c)) will reasonably assure the safety of any other person or the community . . . ," or if the judicial officer finds by a preponderance of the evidence after a detention hearing "that no condition or combination of conditions will reasonably assure the appearance of the person as required . . . ." See United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991).

B.      The government is entitled to move for detention on grounds of danger to the community in a case that –

(1)     involves a crime of violence within the meaning of 18 U.S.C.

§ 3156(a)(4);

(2)     involves an offense punishable by death or life imprisonment;

(3)     involves an offense proscribed by the Controlled Substances Act or

the Controlled Substances Import and Export Act for which the punishment

authorized is imprisonment for ten years[1] or more; or

(4)     involves any felony alleged to have been committed after the

defendant has been convicted of two or more crimes of violence, or of a crime, the

punishment for which is death or life imprisonment, or a ten year [or more] offense

under the Controlled Substances Act or the Controlled Substances Import and

Export Act.

Additionally, the government or the court sua sponte may move for, or set, a

detention hearing where there is a serious risk that the defendant will flee, or where there is

a serious risk of obstruction of justice or threats to potential witnesses.  See 18 U.S.C. §

3142(f).

C.     In determining whether there are conditions of release which will reasonably

assure the appearance of the person as required and the safety of any other person and

the community, or whether pretrial detention is warranted, the judicial officer must take into

account and weigh information concerning --

---

[1]     The maximum penalty is that provided by the statute defining and/or providing the punishment for the
substantive offense – not the sentence, or even the maximum sentence, which might otherwise be imposed
under the federal Sentencing Guidelines.  See United States v. Moss, 887 F.2d 333, 336-37 (1st Cir. 1989).

(a)     the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(b)     the weight of the evidence against the accused;

(c)     the history and characteristics of the person, including --

(i)   the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(ii)   whether, at the time of the current offense or arrest, the defendant was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

(d)     the nature and seriousness of the danger to any other person or the community that would be posed by the person's release.

See 18 U.S.C. § 3142(g).

D.     Additionally, in making the determination, the judicial officer must consider

two rebuttable presumptions, to wit:

First, a rebuttable presumption arises that no condition or combination of

conditions will reasonably assure the safety of any other person or the community if the

judicial officer finds (1) that the defendant has been convicted of a federal crime of

violence within the meaning of § 3156(a)(4) [or a state crime of violence within the

meaning of § 3156(a)(4) if the offense would have been a federal offense if a circumstance

giving rise to federal jurisdiction had existed], a federal offense for which the maximum

sentence is life imprisonment or death, a federal offense for which a maximum term of

imprisonment of ten years or more is prescribed in the Controlled Substances Act -- e.g.,

possession of cocaine, heroin, or more than 1000 pounds of marijuana, with intent to distribute, the Controlled Substances Import and Export Act, or any felony after the person has been convicted of two or more prior offenses as described immediately above, or two or more state or local offenses that would have been offenses described immediately above if circumstances giving rise to federal jurisdiction had existed; (2) that prior offense was committed while the person was on release pending trial; and (3) not more than five years has elapsed since the date of conviction for that prior offense, or his or her release for that prior offense, whichever is later.  See 18 U.S.C. § 3142(e).

       Second, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act or the Controlled Substances Import and Export Act or an offense under the provisions of 18 U.S.C. § 924(c) – i.e., use of or carrying a firearm during the commission of a federal offense which is a felony.  See 18 U.S.C. § 3142(e).

Insofar as the latter "presumption" is applicable in assessing "risk of flight," the burden remains with the government to establish "that no condition or combination of conditions will reasonably assure the appearance of the person as required . . . ."  In striking the proper balance, this court must bear in mind Congress' findings that major drug offenders, as a class, pose a special danger of flight.  The burden then rests on the defendant to come forward with "some evidence" indicating that these general findings are

not applicable to him for whatever reason advanced.  United States v. Dillon, 938 F.2d

1412, 1416 (1st Cir. 1991).  This "only imposes a burden of production on a defendant.

The burden of persuasion remains with the government."  United States v. Palmer-

Contreras, 835 F.2d 15, 17-18 (1st Cir. 1987) (per curiam); see also United States v.

Perez-Franco, 839 F.2d 867, 869-70 (1st Cir. 1988).  Even when a defendant produces

"some evidence" in rebuttal, however, the presumption does not disappear.  Rather, it

retains some evidentiary weight, the amount of which will depend on how closely the

defendant's case "resembles the congressional paradigm" and other relevant factors.

Palmer-Contreras, 835 F.2d at 17-18; Dillon, 938 F.2d at 1416.  See United States v.

Jessup, 757 F.2d 378, 387 (1st Cir. 1985).

### III.  DISCUSSION OF WHETHER DETENTION IS WARRANTED

"Detention determinations must be made individually and, in the final analysis, must

be based on the evidence which is before the court regarding the particular defendant."

U.S. v. Tortora, 922 F.2d 880, 888 (1st Cir. 1990), and cases cited.  Based on the record

before me, I find that there are no conditions which may be imposed which will reasonably

insure the safety of the community or the appearance of the defendant at trial.

The indictment establishes that there is probable cause to believe that the

defendant committed the crime charged.  Since the defendant is charged with a violation

of the Controlled Substances Act (21 U.S.C. § 801 et seq.), which carries a maximum

sentence of ten years or more imprisonment, the rebuttable presumption that no condition

or combination of conditions of release will reasonably assure the appearance of the

defendant as required and the safety of the community applies.  I assume, without

deciding, that the defendant has met his burden of production in response to the presumption.  Nevertheless, I find that the government has proven by clear and convincing evidence that there are no conditions or combination of conditions which will reasonably assure the safety of other persons and the community.  I also find that the government has proven by a preponderance of the evidence that no condition or combination of conditions will assure the defendant's appearance as required

### A.  The Offense Charged And Weight Of The Evidence

The defendant is charged with a serious drug offense, and faces a maximum term of life imprisonment, with a ten year mandatory minimum term of imprisonment if convicted of the crime charged.  The evidence against him appears strong.

Figueroa was arrested as part of a multi-agency investigation of a street gang known as the Latin Kings, which is operating in Lawrence and Lowell, Massachusetts, as well as other areas across the country.  He has been identified as a "blessed member" of the Latin Kings, and goes by the name "King Onix."  Ex. 1 at ¶ 42.  He is not part of the gang leadership, although he has been identified as an active participant in gang affairs. As part of the investigation, there were a number of controlled buys of heroin, cocaine and cocaine base.  Figueroa was identified as providing crack cocaine for one particular sale.

Specifically, but without limitation, the evidence before this court is that Figueroa supplied co-defendant Victor Arroyo with crack cocaine in connection with a sale to a confidential witness ("CW") on February 4, 2003.  Arroyo had made arrangements with the CW to sell her crack cocaine.  He met the CW at a pre-arranged location, and entered the

CW's car.  Arroyo informed the CW that his supplier or dealer[2] was at the lights and would be there shortly.  Ex. 8 at pp. 2, 7.  Arroyo was then seen by a surveillance team exiting the CW's car and entering another car, the sole occupant/driver of which was later identified as Figueroa.  The car was registered to Figueroa's girlfriend.  After leaving Figueroa's car, Arroyo re-entered the CW's car and provided her with crack cocaine.  Id. at p. 3.  While the defendant argues otherwise, the clear implication of the evidence is that Figueroa provided Arroyo with the crack to sell to the CW.

After meeting with Arroyo, Figueroa's car was stopped by police.  During that stop, Figueroa was positively identified.

On November 26, 2003, after the charged transaction, Figueroa was seen outside his vehicle by Lowell Police.  They looked inside his vehicle and saw five bags of cocaine on the car seat "packaged in a manner consistent with distribution."  Ex. 9.  He was arrested and is awaiting trial on those charges.

Following his arrest in the instant case, Figueroa is reported to have said that if he knew about the warrant he would have fled to New York City to avoid apprehension.  Ex. 1A.

## B.  History And Characteristics Of The Defendant

The defendant, age 28, was born on June 13, 1975 in Boston, Massachusetts.  He was raised and educated primarily in New Bedford and Lowell, but has also been in the custody of DYS in Watertown and Framingham.  From 1996 - 2000, he lived in Puerto

---

[2]  The exact language used to describe Figueroa is unclear from the evidence presented to the court.

Rico.  Figueroa obtained his GED with a concentration in construction skills at the Youth

Build USA Program in Lawrence in 2000.  He is single and has a 10 year old son who

lives with his son's mother.  Figueroa's mother and siblings live in Massachusetts

The defendant submitted his resume which shows that, from October 2000 to

January 2002, he worked in the field of food preparation for Community Team Work Mass

preparing food for distribution.  Since that time, however, he has collected unemployment

and has not held a position for more than a few months.  He has not identified any specific

employers since October 2002.

As an adult, Figueroa was convicted in 1993 of conspiracy to violate the Controlled

Substance Act and possession with intent to distribute a Class A controlled substance.  On

November 29, 1993, he was given a 2 year split sentence, 1 year committed with the

balance suspended.  This sentence was reduced to 18 months suspended on March 14,

1994, and appears to have been served with an 18 month suspended sentence incurred in

connection with a 1994 arrest and conviction for conspiracy to violate the Controlled

Substance Act and possession of a Class A controlled substance.  Later in 1994,

Figueroa was charged with assault with a dangerous weapon, and breaking and entering

with intent to commit a felony, but those charges were continued and dismissed.

In 1995, he was found guilty of disorderly conduct and given a 30 day suspended

sentence.  Later that year, he was again found guilty of another disorderly conduct charge

and fined.  In March 2003, Figueroa was charged with possession of Class C and Class D

controlled substances.  Those charges are presently pending in the Lowell District Court.

In August 2003, he was charged with disorderly conduct and trespassing in the same

court, and those charges are also pending.  In November 2003, as noted above, the

defendant was charged with possession of a Class B controlled substance, also in Lowell

District Court, and those charges are pending as well.  There are a number of defaults on

the defendant's record.

### C.  Danger To The Community

The government has met its burden of proof, by clear and convincing evidence, that

there are no conditions or combination of conditions of release which will reasonably

assure the safety of other persons and the community.  Despite his prior arrests for drug

offenses, the defendant continued to sell crack cocaine and other illegal drugs, resulting in

charges pending in both the state and federal courts.  It appears that for awhile (2000 -

2002) the defendant was able to maintain legitimate employment.  Since then, however,

the defendant has only had sporadic, if any, employment and, according to the record

before this court, has been continuously involved in the sale of drugs.

The defendant is unemployed, and does not seem to have any legitimate source of

income.  Thus, it seems likely that the defendant will continue to engage in illicit activities to

support himself and his family.  The rebuttable presumption which applies in the case of

drug charges was premised, in part, on Congress' conclusion "that the risk that a

defendant will continue to engage in drug trafficking constitutes a danger to the 'safety of

any other person or the community.'"  S. Rep. No. 225, 98th Cong., 1st Sess. 13 (1983).

Recognizing that the burden of persuasion remains with the government at all times, I find

that the presumption of dangerousness has not been rebutted.

-10-

The defendant proposes that he be released on bail or an electronic monitor to his present home with his mother and girlfriend. However, there is no evidence to indicate these individuals are able to exert sufficient influence to control the defendant's behavior.

### D.  Risk Of Flight

It is not necessary for the court's detention decision to reach the issue whether the record evidence before this court warrants a conclusion that no condition or combination of conditions -- short of pretrial detention -- would reasonably assure the appearance of the defendant. I do note, however, that the defendant faces a lengthy period of incarceration, and that his record contains a number of defaults. In addition, the defendant has ties to Puerto Rico, and has expressed an ability to flee to New York City. Under such circumstances, the risk of flight is high, although there is no evidence to warrant the conclusion that the defendant would flee the country. I conclude that the government has met its burden of proving that the defendant poses a serious risk of flight and that there are no conditions which would reasonably assure the defendant's appearance as required.

### IV.  ORDER OF DETENTION

IT IS ACCORDINGLY ORDERED that the defendant remain DETAINED pending trial, and it is further Ordered --

(1)    That the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2)    That the defendant be afforded a reasonable opportunity for private consultation with counsel; and

(3)     On order of a court of the United States or on request by an attorney for the government, the person in charge of the corrections facility in which the defendant is detained and confined deliver the defendant to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.


　　　　/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge